IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 17-cv-00272-PAB-STV

BIGBEN 1613, LLC, a Florida limited liability company,

    Plaintiff,

v.

BELCARO GROUP, INC., d/b/a ShopAtHome.com,

    Defendant.

## ORDER

This matter is before the Court on Defendant Belcaro Group, Inc.'s Motion to Compel Arbitration and Dismiss the Complaint Under Federal Rules of Civil Procedure 9(b) and 12(b)(6) [Docket No. 24]. The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## I. BACKGROUND

Defendant operates ShopAtHome.com, a website that provides consumers with cash back on qualifying purchases made through participating online retailers. Docket No. 1 at 2-3, ¶¶ 10-12. In order to take advantage of defendant's cash-back portal, an individual must create an account on ShopAtHome.com and "purchase items by linking through [defendant's] website to the applicable online store." *Id.* at 3, ¶ 13.

Plaintiff has held an account on ShopAtHome.com since late 2014. *Id.* at 4, ¶ 21. On Friday, November 25, 2016, ShopAtHome.com advertised twelve percent cash back on online purchases from Walmart made via ShopAtHome.com. *Id.* at 4,

¶ 22. Relying on this cash back offer, plaintiff purchased approximately $5,400,000 in products from www.Walmart.com through the ShopAtHome.com website. *Id.*, ¶ 23. Shortly thereafter, defendant froze plaintiff's ShopAtHome.com account. *Id.* at 4-5, ¶ 24. Defendant sent plaintiff an email stating that defendant would seize the unpaid balance in plaintiff's cash back account because plaintiff had violated www.Walmart.com's prohibition against "purchases made for resale or commercial use of any kind." *Id.* at 5, ¶ 26.

Plaintiff filed this lawsuit on January 27, 2017 asserting Colorado state law claims for unjust enrichment, conversion, civil theft, and violation of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101 *et seq. Id.* at 6-8. On March 8, 2017, defendant moved to compel arbitration or, alternatively, to dismiss the complaint under Federal Rules of Civil Procedure 9(b) and 12(b)(6). Docket No. 24. Plaintiff filed a response to the motion on March 29, 2017, Docket No. 28, to which defendant replied on April 12, 2017. Docket No. 31.

## II. LEGAL STANDARD

Defendant moves to compel arbitration pursuant to an arbitration provision on the Terms and Conditions ("T&C") page of the ShopAtHome.com website. *See* Docket No. 24 at 6. The Federal Arbitration Act ("FAA") "manifests a liberal federal policy favoring arbitration." *Comanche Indian Tribe v. 49, L.L.C.*, 391 F.3d 1129, 1131 (10th Cir. 2004) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991)).[1]

---

[1]There appears to be no dispute that the FAA governs the arbitration agreement in this case. *See* Docket No. 24 at 6-7 (citing rules under FAA). The arbitration provision expressly provides that, "[b]ecause the Service(s) provided . . . by

2

Consequently, the Court must "resolve 'any doubts concerning the scope of arbitrable issues . . . in favor of arbitration.'" *P & P Industries, Inc. v. Sutter Corp.*, 179 F.3d 861, 866 (10th Cir. 1999) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). "In addition, this liberal policy 'covers more than simply the substantive scope of the arbitration clause,' and 'encompasses an expectation that [arbitration] procedures will be binding.'" *Id.* (citation omitted).

"[A]lthough the presence of an arbitration clause generally creates a presumption in favor of arbitration, this presumption disappears when the parties dispute the existence of a valid arbitration agreement." *Bellman v. i3Carbon*, LLC, 563 F. App'x 608, 613 (10th Cir. 2014) (unpublished) (citations omitted). Determining whether a dispute is subject to arbitration "is similar to summary judgment practice." *Id.* at 612 (quoting *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1261 (10th Cir. 2012)). The party moving to compel arbitration must present "evidence sufficient to demonstrate the existence of an enforceable agreement." *Id.* The burden then shifts to the nonmoving party "to raise a genuine dispute of material fact regarding the existence of an agreement." *Id.*

Defendant also moves to dismiss plaintiff's claims under Federal Rules of Civil Procedure 9(b) and 12(b)(6). *See* Docket No. 24 at 9. To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

---

ShopAtHome.com concerns interstate commerce, the [FAA], not state arbitration law, shall govern the arbitrability of all Disputes." Docket No. 24-2 at 13.

3

570 (2007)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks and alteration marks omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim. *Khalik*, 671 F.3d at 1191 (quotations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (alteration marks omitted ).

## III. ANALYSIS

The Court begins by considering whether plaintiff's claims are subject to arbitration. To meet its initial burden of demonstrating an enforceable arbitration agreement, defendant has attached copies of the Terms and Conditions from the ShopAtHome.com website, Docket Nos. 24-2, 31-2, along with declarations from defense counsel Luke Connelly and Belcaro Group's Chief Financial Officer, Rebecca L. Shepherd, attesting to the copies' authenticity. Docket Nos. 24-1, 31-1. Defendant argues that plaintiff consented to the Terms and Conditions when it registered an account on the ShopAtHome.com website. Docket No. 24 at 6-8; Docket No. 24-2 at 1

("By using the ShopAtHome.com Site . . . , you agree that you have read and you understand, and consent to the following Terms and Conditions . . . ."); *see also* Docket No. 1 at 4, ¶ 21 (alleging that plaintiff has maintained an account on www.shopathome.com since late 2014).

Plaintiff opposes defendant's motion to compel arbitration on two grounds. First, plaintiff argues that the motion is procedurally defective because it relies on extrinsic evidence that was not properly authenticated or referenced in the complaint. Docket No. 28 at 3-7. Second, plaintiff contends that the arbitration agreement is unenforceable. *Id.* at 7.

### A. Terms and Conditions

Plaintiff asserts that defendant's motion to compel lacks evidentiary support because the Terms and Conditions submitted by defendant have not been properly authenticated and are otherwise inadmissible to support a Rule 12(b)(6) motion to dismiss. Docket No. 28 at 3-6. The Court finds both arguments unpersuasive.

In conjunction with its motion to compel arbitration, defendant filed a declaration from one of its attorneys, Luke Connelly, stating that the attached copy of ShopAtHome.com's Terms and Conditions was a "true and correct copy" of the terms and conditions "in effect at the time of the alleged conduct described in the Complaint." Docket No. 24-1 at 1, ¶ 3. Plaintiff argues that this declaration is insufficient to authenticate the Terms and Conditions because it constitutes inadmissible hearsay and is not based on personal knowledge. Docket No. 28 at 3-4. Although the Court agrees that Mr. Connelly's declaration lacks foundation, defendant has submitted a second copy of the Terms and Conditions along with a declaration from its Chief Financial

5

Officer, Rebecca Shepherd, attesting to the document's authenticity. *See* Docket Nos. 31-1, 31-2. Ms. Shepherd's declaration is expressly "based on personal knowledge," Docket No. 31-1 at 1, and thus does not suffer from the same lack of foundation as the Connelly declaration.

Plaintiff argues that it is "inappropriate" for defendant to "attempt to remedy the defects of the Connelly [Declaration] in its reply." Docket No. 28 at 3 n.2. The Court disagrees for two reasons. First, it is not clear that defendant was required to authenticate the Terms and Conditions at all, given that plaintiff does not challenge the authenticity of the copy submitted with defendant's motion to compel. *See* Docket No. 28 at 2 n.1 ("Plaintiff does not, through this response, suggest that the Terms and Conditions are not binding upon it, merely that the Defendant is using improper procedural tactics to introduce it . . . ."); *id.* at 7 (reiterating that plaintiff objects to the Terms and Conditions "solely on procedural grounds"); *see also Umbenhower v. Copart, Inc.*, 2004 WL 2660649, at *6 (D. Kan. Nov. 19, 2004) (holding that defendants were not required to authenticate copy of arbitration agreement where plaintiff "ha[d] not submitted any evidence disputing the authenticity of the agreement that defendants have submitted with their motion to compel"); *cf. GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) (court may consider a document referred to in the complaint in resolving a motion to dismiss where the document is central to the plaintiff's claim and the parties do not dispute the document's authenticity). Second, the only case that plaintiff relies upon to support its argument does not establish that a party may never authenticate a document through a

6

declaration submitted with a reply. In *Hendrickson v. Doyle*, 150 F. Supp. 3d 1233 (D. Colo. 2015), the court declined to consider authentication affidavits submitted with plaintiff's reply after finding that plaintiff's counsel had committed several procedural errors with respect to plaintiff's summary judgment motion and exhibits. *Id.* at 1235. In declining to consider the affidavits, however, the court noted that it would have been willing to "forgive an isolated oversight corrected through a Reply brief (*e.g.*, explicable failure to submit the proper authentication for one or two exhibits)." *Id.* Defendant's failure in this case to properly authenticate the Terms and Conditions in its motion to compel is more akin to an "isolated oversight" than to "[t]he haphazard way in which [plaintiff's counsel] went about filing the [summary judgment] motion and exhibits" in *Hendrickson*. *Id.* at 1234-35. Accordingly, the Court declines to ignore the Terms and Conditions on this basis alone.

Plaintiff argues in the alternative that a court may not rely on documents outside the complaint to resolve a Rule 12(b)(6) motion to dismiss without converting the motion into a motion for summary judgment. *See* Docket No. 28 at 4-5 & n.3. This may be a correct statement of the law with regard to motions properly brought under Rule 12(b)(6). However, motions to compel arbitration are resolved under a summary-judgment-type framework. *See Hancock*, 701 F.3d at 1261 (stating that the framework applicable to motions to compel arbitration "is similar to summary judgment practice"); *Clowdis v. Colorado Hi-Tec Moving & Storage, Inc.*, No. 11-cv-00036-CMA-KMT, 2011 WL 5882191, at *4 & n.4 (D. Colo. Nov. 3, 2011) (declining to apply Rule 12(b)(6) dismissal standard to motion to compel arbitration based on finding that courts in this

district "approach[] disputes over whether the parties have agreed to arbitrate by applying a standard similar to that governing motions for summary judgment" (internal quotation marks omitted)), *recommendation adopted*, 2012 WL 895701 (D. Colo. Mar. 15, 2012). Under that framework, the Court may consider the Terms and Conditions submitted by defendant in determining whether there is a valid and enforceable agreement to arbitrate. *See Hancock*, 701 F.3d at 1261-64 (considering declarations from AT & T employees to determine whether plaintiffs agreed to terms of service containing forum selection and arbitration clauses); *Davis v. USA Nutra Labs*, 303 F. Supp. 3d 1183, 1191 (D.N.M. 2018) (relying on screenshots, Groupon's Terms of Use, and declaration regarding screenshots and Terms of Use to find that plaintiff had agreed to arbitration); *Patel v. Jack in the Box Inc.*, 2017 WL 541532, at *2 (S.D. Cal. Jan. 27, 2017) (finding that defendant had "satisfied its initial burden of showing an arbitration agreement exist[ed]" by producing an arbitration agreement signed by the plaintiff in conjunction with its motion to compel); *see also Nelson v. Tamko Building Prods., Inc.*, 2015 WL 3649384, at *2 (D. Kan. June 11, 2015) (denying motion to compel arbitration where defendant had not "submitted evidence sufficient to establish an enforceable agreement to arbitrate").

The Court therefore finds that neither of the "procedural defects" identified by plaintiff is fatal to defendant's motion to compel arbitration.

**B. Enforceability**

Plaintiff argues that, even if defendant's motion is not procedurally defective, defendant cannot demonstrate an enforceable arbitration agreement. Docket No. 28 at

8

7. Specifically, plaintiff contends that the arbitration agreement is illusory because the Terms and Conditions provide that "ShopAtHome.com reserves the right to revise these Terms and Conditions, at its sole and absolute discretion, by updating this posting." *Id.* Defendant responds that it is the arbitrator, not the court, "who must decide whether the contract as a whole is unenforceable." Docket No. 31 at 3.

The parties' dispute is resolved by the Tenth Circuit's decision in *In re Cox Enterprises, Inc. Set-top Cable Television Box Antitrust Litigation*, 835 F.3d 1195 (10th Cir. 2016). There, the court declined to resolve the plaintiffs' argument that the defendant's promise to arbitrate was illusory "because the argument amount[ed] to a challenge to the contract as a whole." *In re Cox*, 835 F.3d at 1199. Relying on Supreme Court precedent for the proposition that "a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator," the court determined that the plaintiffs' "illusory" argument challenged the entire Internet-service agreement because, under general contract law principles, "the arbitration provision would be unenforceable only if the entire agreement [was] unenforceable." *In re Cox*, 835 F.3d at 1210-11.[2]

Like in *In re Cox*, it is "undeniable that [plaintiff's] 'illusory' argument attacks [the Terms and Conditions in their entirety], rather than just the arbitration provisions,

---

[2]The court recognized an exception to this general rule where a state's laws require each provision of a contract to "be supported by consideration expressed in that provision." *In re Cox*, 835 F.3d at 1212. In such circumstances, "a plaintiff's 'illusory' argument *could* apply to the arbitration agreement alone and [a] court would not be precluded by [*Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395 (1967)] from addressing the argument." *In re Cox*, 835 F.3d at 1212. Like the plaintiffs in *In re Cox*, however, plaintiff has not shown that Colorado law compels such a result.

9

because the argument is based on language outside those provisions." 835 F.3d at 1211. Specifically, plaintiff relies on language found in the introductory section of the Terms and Conditions. *See* Docket No. 28 at 7 (quoting Docket No. 24-2 at 1). Because this language applies to the parties' agreement as a whole and not merely to the arbitration agreement, plaintiff's "illusory" argument "must be resolved by the arbitrator." *In re Cox*, 835 F.3d at 1211 (finding that plaintiffs' "illusory" argument was subject to arbitration where the language upon which plaintiffs relied in making their argument was contained in the introduction to the parties' agreement).[3]

### C. Application of Arbitration Agreement to Plaintiff's Claims

Because defendant has presented "evidence sufficient to demonstrate the existence of an enforceable [arbitration] agreement," *Bellman*, 563 F. App'x at 612, the Court need only determine whether plaintiff's claims fall within the scope of that agreement.[4] "To determine whether a particular dispute falls within the scope of an agreement's arbitration clause, a court should undertake a three-part inquiry." *Cummings v. FedEx Ground Package Sys., Inc.*, 404 F.3d 1258, 1261 (10th Cir. 2005) (quoting *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218,

---

[3]In arguing that the arbitration agreement is illusory, plaintiff cites *Grosvenor v. Qwest Corp.*, 854 F. Supp. 2d 1021 (D. Colo. 2012). As defendant points out, however, both *Grosvenor* and the Tenth Circuit case on which it relies have been superseded by *In re Cox*. *See* Docket No. 31 at 5; *see also In re Cox*, 835 F.3d at 1212 (noting that *Dumais v. American Golf Corp.*, 299 F.3d 1216 (10th Cir. 2002), was not binding precedent on the issue of whether a court may consider "illusory" arguments going to a contract as a whole because the case did not "consider[], or even cite[], *Prima Paint* or [*Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006)]").

[4]Plaintiff does not argue that its claims fall outside the scope of the arbitration agreement. The Court undertakes this inquiry in the interest of completeness.

224 (2d Cir. 2001)). First, "a court should classify the particular clause as either broad or narrow." *Louis Dreyfus Negoce S.A.*, 252 F.3d at 224. If the arbitration clause is narrow, "the court must determine whether the dispute is over an issue that is on its face within the purview of the clause, or over a collateral issue" that will generally not be arbitrated. *Id*. "Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." *Id*. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

The arbitration agreement in this case applies to any "Dispute" between the user and ShopAtHome.com. Docket No. 24-2 at 12, ¶ 12(a). "Dispute" is defined as

> any dispute, claim, or controversy between you and ShopAtHome.com regarding any aspect of your relationship with ShopAtHome.com, whether based in contract, statute, regulation, ordinance, tort (including, but not limited to, fraud, misrepresentation, fraudulent inducement, negligence, or any other intentional tort), or any other legal and equitable theory, and includes the validity, enforceability or scope of this Dispute Resolution provision (with the exception of the enforceability of the class action waiver clause provided in this paragraph).

*Id.*, 12(b).[5] Because the arbitration provision does not impose any limits on the types of claims that may be subject to arbitration, the Court finds it to be broad. *See Sanchez v. Nitro-Lift Techs., L.L.C.*, 762 F.3d 1139, 1146 (10th Cir. 2014) (finding clause requiring

---

[5] The arbitration clause further states that "'ShopAtHome.com' means Belcaro Group, Inc., d/b/a ShopAtHome.com and its parents, subsidiaries and affiliated companies . . . ." *Id.*

11

arbitration of "[a]ny dispute, difference or unresolved question between" the parties to be broad); *Louis Dreyfus Negoce S.A.*, 252 F.3d at 225 (noting that "expansive language will generally suggest a broad arbitration clause"). Accordingly, a presumption of arbitrability applies that may be "overcome only if [the Court] can say 'with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Soc'y of Professional Engineering Employees in Aerospace v. Spirit Aerosystems, Inc.*, 681 F. App'x 717, 721 (10th Cir. 2017) (unpublished) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)). Here, all of plaintiff's claims relate to its use of ShopAtHome.com. The Court therefore cannot "say with positive assurance" that the arbitration provision does not cover the parties' dispute. The Court will therefore administratively close this case while plaintiff's claims are resolved in arbitration.[6]

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendant Belcaro Group, Inc.'s Motion to Compel Arbitration and Dismiss the Complaint Under Federal Rules of Civil Procedure 9(b) and 12(b)(6) is **GRANTED** in part and **DENIED** in part as stated in this order. It is further

**ORDERED** that the parties shall proceed with arbitration in accordance with the

---

[6]Because plaintiff's claims are subject to arbitration, the Court will not determine whether they should be dismissed on the merits under Fed. R. Civ. P. 12(b)(6). In a case involving a written arbitration agreement between the parties that encompasses the disputes at issue in the litigation, section 3 of the FAA, 9 U.S.C. § 3, instructs courts to stay the action "until such arbitration has been had in accordance with the terms of the agreement." The Tenth Circuit has described administrative closure as being "the practical equivalent of a stay." *Quinn v. CGR*, 828 F.2d 1463, 1465 & n.2 (10th Cir. 1987).

arbitration agreement.  It is further

**ORDERED** that this case shall be administratively closed, subject to reopening by any party upon a showing of good cause, pursuant to D.C.COLO.LCivR 41.2.  It is further

**ORDERED** that, not later than twenty days after the completion of the arbitration proceeding, the parties shall file a status report advising the Court whether they believe the case should be reopened for good cause for any further proceedings in this Court or whether the Case may be dismissed.

DATED September 6, 2018.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge